# In the United States Court of Federal Claims

No. 06-827 C
Filed: May 30, 2014
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| FRANK J. PROCHAZKA, | * | |
| | * | |
| Plaintiff, | * | Attorney Fees, Expenses, and Costs; |
| | * | Back Pay, Under the Military Pay Act, |
| v. | * | 37 U.S.C. § 204; |
| | * | Correction of Military Records; |
| THE UNITED STATES, | * | Equal Access to Justice Act, 28 U.S.C. § 2412. |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Thomas Andrew Coulter**, LeClair Ryan, P.C., Richmond, Virginia, Counsel for Plaintiff.

**Devin Andrew Wolak**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Joseph Robert Berger**, Dickstein Shapiro, LLP, Washington, D.C., Counsel for National Veterans Legal Service Program, Washington, D.C., *Amicus Curiae* In Support of Plaintiff Re: Liability and Damages.

**MEMORANDUM OPINION AND FINAL ORDER REGARDING PLAINTIFF'S CLAIM
FOR ATTORNEY FEES, EXPENSES, AND COSTS
UNDER THE EQUAL ACCESS TO JUSTICE ACT**

**BRADEN,** *Judge.*

Congress enacted the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, to enable a plaintiff, like Captain Frank J. Prochazka ("Captain Prochazka"), to obtain competent legal counsel to pursue monetary claims against the United States, in complex cases, such as this one. Of course, the statutorily defined fee structure does not come close to compensating counsel, such as Thomas A. Coulter or his firm LeClair Ryan, P.C., for the market value of their professional services. Therefore, the court would be remiss if it did not express appreciation to Plaintiff's counsel and the law firm of LeClair Ryan, P.C. for their professional services in this matter.

## I.     RELEVANT FACTS.

On June 30, 2002, Captain Prochazka, a member of the Judge Advocate General's Corps ("JAGC"), with a flawless record of service, was "involuntarily retired" by the United States Navy ("Navy"), based on an internal determination that his "service creditable" and consequential "mandatory retirement date" prior to the enactment of the Defense Officer Personnel Management Act ("DOPMA") required that he be denied five years of active duty pay and subject to a substantial reduction of pension benefits.  This decision was based on the Navy's erroneous determination that no method existed, prior to DOPMA, to determine Plaintiff's "total commissioned service," because the statute delineating how "total commissioned service" was calculated for Naval Officers like Plaintiff had been insignificantly amended in 1968.[1]

After exhausting all avenues of administrative relief, including the Naval Personnel Command ("NPC"), the Office of the Navy's Judge Advocate General ("OJAG"), and the Board for Correction of Naval Records ("BCNR"), on December 6, 2006, Captain Prochazka filed a *pro se* complaint in the United States Court of Federal Claims, seeking correction of his military records, "including a determination that the date of his mandatory retirement is July 1, 2008, and for adjustments to pay and allowances for the intervening period and for related relief."  Compl. ¶ 1.   On February 5, 2007, an Amended Complaint was filed also seeking corrective and monetary relief under the Tucker Act, 28 U.S.C. § 1491(a)(1); the Military Pay Act, 37 U.S.C. § 204; 10 U.S.C. § 1552 (authorizing the correction of military records); and 10 U.S.C. §§ 1401–12 (computation of military retired pay).  Am. Compl. ¶ 4.  On March 25, 2008, the court stayed this case to afford Plaintiff time to obtain counsel.

On January 26, 2009, Thomas A. Coulter, a partner in the firm of LeClair Ryan, P.C., filed a motion to appear as counsel for Captain Prochazka before the BCNR and the court.

On December 10, 2009, the court issued a Memorandum Opinion And Order determining that it had jurisdiction to adjudicate the claims alleged in the February 5, 2007 Amended Complaint, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Military Pay Act, 37 U.S.C. § 204.  *See Prochazka v. United States*, 90 Fed. Cl. 481, 488–89 (2009) ("*Prochazka I*"). The court also determined that the BCNR violated 10 U.S.C. § 1556, and its own internal procedures, by failing to allow Captain Prochazka the opportunity to comment on a May 2004 NPC Advisory Opinion before issuing a May 11, 2004 decision.  *Id.* at 493–94.  Since this error was prejudicial and the May 2004 NPC Advisory Opinion failed to provide a rational basis for

---

[1] Prior to 1968, 10 U.S.C. § 6388(b) required the "total commissioned service of each officer *originally* appointed in the grade of lieutenant (junior grade) or ensign in any staff corps of the Navy . . . [to be] computed from June 30 of the fiscal year in which he accepted that appointment."  10 U.S.C. § 6388(b) (1964) (emphasis added).  In 1968, the statute was modified to require that the "total commissioned service of each officer *initially* appointed in the grade of lieutenant (junior grade) or ensign in any staff corps of the Navy . . . is computed from June 30 of the fiscal year in which he accepted that appointment."  10 U.S.C. § 6388(b), as amended in 1968.  In short, the text of the statute was changed from "originally appointed" to "initially appointed."

how the Navy's determination of Plaintiff's "service date" was computed, the court denied the Government's August 3, 2007 Motion To Dismiss, stayed pending Cross Motions For Judgment On The Administrative Record, and remanded the case, pursuant to RCFC 52.2, instructing the BCNR to answer four specific questions. *Id.* at 497–98.[2]

Thereafter, the BCNR requested and received advisory opinions from the NPC and the OJAG. *See* 3/16/11 *BCNR Dec.*, Doc. 84 at 1.  A March 29, 2010 Advisory Opinion from the NPC reaffirmed the Navy's prior interpretation of 10 U.S.C. § 6388(b), as amended in 1968.[3]  A March 26, 2010 Advisory Opinion from the OJAG, however, adopted the reasoning of an October 26, 2001 OJAG Advisory Opinion ("2001 OJAG Op."), prepared in response to a June 6, 2001 letter from Captain Prochazka to the Navy, but not previously disclosed to him, despite repeated requests. *See* 2010 OJAG Op. at 1 (citing "reference (c)").  Both the 2001 and 2010 OJAG Advisory Opinions concluded that Captain Prochazka's September 20, 1977 appointment into the Regular Navy was as a lieutenant and not as a lieutenant (junior grade). *See* 2010 OJAG Op. at 2 (citing 2001 OJAG Op. at 7–12).  In other words, *if* Captain Prochazka had been appointed into the Regular Navy as a lieutenant (junior grade) it was possible to compute his "total commissioned service," pursuant to 10 U.S.C. § 6388(b), as amended in 1968, because:

> This section [§ 6388(b)] as enacted used the word "originally" [instead of] "initially." 10 U.S.C. § 6388(b) as amended by U.S. Code, 1976, substitutes the word "initially" for "originally." The legislative history is silent on the reason behind this change. An officer's first appointment in a staff corps is an original

---

[2] The court directed the BCNR to answer the following questions:

1. Pursuant to NAVMILPERSCOM Notice 1821, should the Navy compute Plaintiff's service date under the "AA" or "M" method?

2. If Method "AA" is the proper method for computing Plaintiff's service date, what is Plaintiff's correct service date, given the type of his appointment and date of rank at the time of appointment?

3. If method "M" is the proper method for computing Plaintiff's service date, what is the proper amount of "constructive service credit" that should be awarded to Plaintiff?

4. If Plaintiff's service date and involuntary retirement date should be adjusted, what correction of his military record is required and what accrued pay and benefits are due?

*Prochazka I*, 90 Fed. Cl. at 498.

[3] The March 29, 2010 NPC Advisory Opinion corrected a prior March 15, 2010 NPC Advisory Opinion that contained "clerical errors."  *See* 3/16/11 *BCNR Dec.*, Doc. 84 at 2.

appointment; *thus, substituting "initially" for "originally" would not alter the meaning of the statute.*

2001 OJAG Op. at 7 n.23 (emphasis added).

On September 24, 2010, the BCNR requested a "supplemental advisory opinion" from the OJAG, to ascertain whether the March 26, 2010 OJAG Advisory Opinion could be "harmonized" with the March 29, 2010 NPC Advisory Opinion. *See* 3/16/11 *BCNR Dec.*, Doc. 84, Encl. 13 at 3.

On October 25, 2010, without performing any additional analysis, the OJAG issued a "supplemental advisory opinion" adopting the March 29, 2010 NPC advisory opinion's interpretation of 10 U.S.C. § 6388, as amended in 1968, and disavowing the reasoning of the 2001 OJAG Opinion regarding the substitution of "initially" for "originally" in the statute. 10/25/10 OJAG Supp. Op. at 2.

On January 17, 2011, Captain Prochazka submitted a new record to the BCNR that he had only recently obtained from the Navy with the assistance of Senator Jim Webb, demonstrating that Captain Prochazka's first appointment into the Regular Navy was as a lieutenant (junior grade), and not as a lieutenant. *See* 3/16/11 *BCNR Dec.*, Doc. 84, Encl. 22 at 9 (copy of an "ALNAV" electronic message that was transmitted at the time of Captain Prochazka's appointment into the Regular Navy in 1977 confirming his permanent appointment was to the rank "LTJG," with a temporary appointment as "LT").

On March 16, 2011, the BCNR issued a decision concurring with the March 29, 2010 NPC Opinion and the October 25, 2010 OJAG "supplemental" advisory opinion, concluding that no method existed, prior to DOPMA, to determine Captain Prochazka's "total commissioned service." *See* 3/16/11 *BCNR Dec.* at 6–7. Therefore, the BCNR again found that the Navy correctly computed Captain Prochazka's "total commissioned service" under the M method set forth in SECNAVINST 1821.1. *See* 3/16/11 *BCNR Dec.* at 6–7.

On April 30, 2012, after additional briefing on the parties' respective Motions For Judgment On The Administrative Record, the court determined that the Navy and the BCNR's interpretation of 10 U.S.C. § 6388(b), as amended in 1968, was arbitrary, capricious, and contrary to law. *See Prochazka v. United States*, 104 Fed. Cl. 774, 796–97 (2012) ("*Prochazka II*").

## II.   PROCEDURAL HISTORY.

On November 16, 2012, the court entered a Final Judgment that Captain Prochazka was:

[D]ue $413,940.54 in back pay, comprised of active-duty back pay of $612,961.98 for the period between July 1, 2002 and June 30, 2007; a credit to the government of $295,244.19 for retirement pay received between July 1, 2002 and June 30, 2007; and retirement back pay of $96,222.75 for the period of July 1, 2007 through September 30, 2012 . . . . Furthermore, . . . [P]laintiff is entitled to

receive monthly military retirement pay of $8,459.00, beginning on October 1, 2012 and going forward[.]

Judgment, *Prochazka v. United States*, No. 06-cv-827 (Fed. Cl. Nov. 16, 2012), ECF No. 110.

On January 14, 2013, the Government filed a Notice Of Appeal, but withdrew it on June 14, 2013, pursuant to a Joint Stipulation Of Dismissal. *See* Order, *Prochazka v. United States*, No. 2013-5052 (Fed. Cir. filed June 20, 2013), ECF No. 17 (formal mandate dismissing appeal pursuant to Federal Rule of Appellate Procedure 42(b)).

On July 19, 2013, Plaintiff filed a Motion For Attorney Fees And Related Expenses/Costs with the United States Court of Federal Claims, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA Mot."), together with: (1) the July 19, 2013 Declaration of Thomas A. Coulter ("Coulter Decl."); (2) a copy of the United States Department of Labor, Bureau of Labor Statistics' Consumer Price Index ("CPI"); (3) an itemized spreadsheet listing Plaintiff's counsel's time entries, adjusted for cost of living ("Ex. A"); (4) supporting invoices from LeClair Ryan, P.C., for time billed from December 31, 2008 through April 30, 2013 ("Ex. B"); (5) the declaration of Michael A. Batten, the Project Billing and Audit Coordinator at LeClair Ryan, P.C. ("Ex. C"); (6) the July 17, 2013 Declaration of Plaintiff, Captain Frank J. Prochazka ("7/17/13 EAJA Decl."), including his 2006 and 2007 joint 1040 tax returns ("7/17/13 EAJA Decl. Ex. A"), and an itemized description of costs and expenses that Captain Prochazka incurred prior to retaining LeClair Ryan, P.C. ("EAJA Decl. Ex. B"); (7) an itemized list of costs and expenses, including supporting invoices, incurred by LeClair Ryan, P.C. ("Ex. D"); and (8) EAJA Form 5, Application For Fees And Other Expenses Under The Equal Access To Justice Act ("Ex. E").

On November 25, 2013, after the court granted four extensions, the Government filed a Response ("Gov't Resp.").

On January 22, 2014, Plaintiff filed a Reply and Supplemental Motion For Attorney Fees And Related Expenses/Costs ("Pl. Reply"), requesting: (1) $110,561.56 for attorney fees incurred from November 10, 2008 to December 20, 2013, (2) $763.37 in expenses and costs incurred by Captain Prochazka for the period during which he proceeded *pro se*, and (3) $1,950.00 in expenses and costs incurred by LeClair Ryan, P.C. EAJA Mot. 21; Pl. Reply 22. Plaintiff's January 22, 2014 Reply also includes an updated itemized spreadsheet listing Plaintiff's counsel's time entries spent preparing the EAJA Motion and January 22, 2014 Reply ("Pl. Reply Ex. A").

## III.   DISCUSSION.

### A.   Jurisdiction.

Plaintiff's July 19, 2013 Motion For Attorney Fees And Related Expenses/Costs properly invokes the court's jurisdiction pursuant to the EAJA, under which "a [federal trial] court shall award to a prevailing party other than the United States fees and other expenses . . . in any civil action . . . brought by or against the United States in any court having jurisdiction of that action,"

if certain requirements are met.  *See* 28 U.S.C. § 2412(d)(1)(A).   And, since the United States Court of Federal Claims had jurisdiction to adjudicate the claims alleged in the December 6, 2006 Complaint, as amended, the court also has jurisdiction to adjudicate Plaintiff's July 19, 2013 Motion.  *See Burkhardt v. Gober*, 232 F.3d 1363, 1367 (Fed. Cir. 2000) (holding that a court has jurisdiction to adjudicate a claim filed under the EAJA for attorney fees, expenses, and costs where the court "ha[d] the power to hear and decide the underlying civil action in which the EAJA applicant incurred those fees and other expenses").

### B.   The Requirements Of The Equal Access To Justice Act.

Congress enacted the EAJA to authorize a prevailing party in a lawsuit against the United States to recover reasonable attorney fees, expenses, and costs.  *See Scarborough v. Principi*, 541 U.S. 401, 406 (2004) ("Congress enacted EAJA, Pub. L. 96-481, Tit. II, 94 Stat. 2325, in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in . . . administrative proceedings brought by or against the Federal Government.'" (quoting H.R. Rep. No. 96-1005, at 9 (1980))).  Section (d)(1)(A) of the EAJA provides that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Section (d)(1)(B) requires a "party" seeking reasonable attorney fees, expenses, and costs under the EAJA to submit an application "within thirty days of final judgment in the action," together with a statement asserting that the position of the United States was not substantially justified and showing that:

> [T]he party[4] is a prevailing party and is eligible to receive an award . . . , the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

28 U.S.C. § 2412(d)(1)(B).

The United States Supreme Court has held that the EAJA requires: "(1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3)

---

[4] "Party" is defined, in relevant part, as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]"  28 U.S.C. § 2412(d)(2)(B).

that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412 (d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990).

The court's determination of whether the position of the United States was "substantially justified" is based on "the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B).

In this case, the Government does not dispute that Captain Prochazka: (1) is the "prevailing party"; (2) is a "party . . . whose net worth did not exceed $2,000,000 at the time the civil action was filed"; and (3) timely filed a motion for attorney fees, expenses and costs. Gov't Resp. 5. The court is also satisfied that Plaintiff meets these threshold requirements.[5] Nor does the Government suggest that there are any "special circumstances that would make an award, on the whole, unjust." Gov't Resp. 11.

The Government, however, contends that its position was "substantially justified."

### C.     Whether The Government's Position Was "Substantially Justified."

#### 1.     The Government's Argument.

The Government argues that the court must take into account that "the EAJA is a partial waiver of sovereign immunity that 'must be strictly construed in favor of the United States.'" Gov't Resp. 4 (quoting *Ardestani v. INS*, 502 U.S. 129, 137 (1991)). Congress did not intend the EAJA to serve as a "mandatory fee shifting device." Gov't Resp. 4 (quoting *KMS Fusion,*

---

[5] In this case, Captain Prochazka unquestionably is the "prevailing party," since the court awarded him back pay from July 1, 2002, and directed that his military records be corrected. *See Prochazka II*, 104 Fed. Cl. at 800; *see also Gurley v. Peake*, 528 F.3d 1322, 1326 (Fed. Cir. 2008) ("Prevailing party status requires 'some relief on the merits.'" (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001))).

Captain Prochazka also submitted a July 17, 2013 Declaration indicating that his net worth has never exceeded $2,000,000 "during the entire pendency of this matter, including at the time the civil action was filed[.]" 7/17/13 EAJA Decl. ¶ 2. His Joint 1040 tax returns for 2006 and 2007 confirm this representation. 7/17/13 EAJA Decl. Ex. A.

In addition, the July 19, 2013 EAJA Motion included an itemized statement and was timely as it was filed within thirty days of entry of the June 20, 2013 Mandate and Order. *See Order, Prochazka v. United States*, No. 2013-5052 (Fed. Cir. filed June 20, 2013), ECF No. 17; *see also* 28 U.S.C. § 2412(d)(2)(G) (defining "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement").

*Inc. v. United States*, 39 Fed. Cl. 593, 598 (1997) (citing *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1465 (Fed. Cir. 1986) (*en banc*))).

The Government also contends that the legal issues in this case were of first impression and that the United States Court of Appeals for the Federal Circuit has cautioned that "[w]hen the issue is a novel one on which there is little precedent, courts have been reluctant to find the [G]overnment's position was not substantially justified."   Gov't Resp. 7 (quoting *Norris v. Securities and Exchange Comm'n.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Schock v. United States*, 254 F.3d 1, 6 (1st Cir. 2001))); *see also id.* ("The general issue raised by [Plaintiff] had not been raised in [the United States Court of Federal Claims] before.").

*Russo v. Winter*, No. 06-cv-1256 (S.D. Cal. June 30, 2006), ECF No. 12, is the only case addressing the general issue raised in this case.   Therein, the United States District Court for the Southern District of California dismissed the plaintiff's challenge as non-justiciable, reasoning that the Secretary's "uniform and consistent interpretation of the regulations at issue is not plainly erroneous and represents a reasoned management policy decision."   Gov't Resp. 7 (quoting Order, *Russo*, No. 06-cv-1256 (S.D. Cal. June 30, 2006), at 7, ECF No. 12); *see also id.* 10 ("The only other court to consider this issue, the Southern District of California, elected to refrain from interfering with the Navy's considered and rational personnel-management policy.").   Although that case arose under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), and is "not strictly applicable to Tucker Act military pay claims," the District Court's observations demonstrate that the Government's position in this case was "substantially justified."   Gov't Resp. 7.   Moreover, since this case involves "matters affecting the military," the court should decline to determine that the Government's position was not substantially justified.[6]   Gov't Resp. 8.

In addition, the complex substantive nature of this case evidences that the Government's litigation position was substantially justified.   *See* Gov't Resp. 9 ("[T]o the extent that there is any question about the need for litigation due to the difficulty of the question, the procedural history of this case should put such concerns to rest.").   Specifically, the court required the parties to submit multiple rounds of briefing on the merits, and the court remanded the case on December 10, 2009 to the BCNR.   Gov't Resp. 10 (describing the procedural history as demonstrating that "[r]easonable minds have already disagreed about how to handle this issue, and the Government was [therefore] substantially justified in defending this litigation").

---

[6] The Government cites *Russo* as support, because it "echo[es] well-established and longstanding precedent" that the court's "deference to the President and Congress is at its 'apogee' when addressing challenges to the exercise of congressional oversight or executive branch management of the military and the national defense."   Gov't Resp. 8–9.   For this reason, military matters "have been held to be non-justiciable or non-reviewable by the judicial branch."   Gov't Mot. 9.

### 2.    Plaintiff's Response.

Prior to 1968, administrative and court decisions made clear that a staff corps officer's "total commissioned service" under Section 6388 "began with his first commission in a staff corps of the Regular Navy, with a permanent commission . . . . [and that] [o]ther prior commissioned service, as a Reserve officer or a line officer, simply did not count toward his total commissioned service." EAJA. Mot. 6 (citing, *e.g.*, *To the Secretary of the Navy*, 37 Comp. Gen. 747, 748 (1958) (explaining that "years of commissioned service beginning on June 30 of the year in which the officer was *originally commissioned in a staff corps of the Regular Navy, with a permanent commission*, [are to be counted] for the purpose of determining a staff corps officer's eligibility for . . . separation from the active list" (emphasis added)); *see also Payson v. Franke*, 108 U.S. App. D.C. 368, 370–71 (1960) (same), *cert. denied*, 365 U.S. 815 (1961)).  Moreover, the Navy never disputed Plaintiff's contention, first made in June 2001, that his "total commissioned service" under pre-1968 law would be determined from the date of his permanent appointment as a lieutenant (junior grade) in the Regular Navy on September 20, 1977.  EAJA Mot. 6.  As such, the Navy departed from established law.  For this reason, among others, the Government's litigation position in this case was not substantially justified.  The Government's position, both at the agency level and in the United States Court of Federal Claims, rested on a "one-word change in the statutory language" (EAJA. Mot. 6) that was contrary to the plain language of Section 6388, as amended in 1968.  EAJA Mot. 15.  As the court detailed in the April 30, 2012 Memorandum Opinion And Final Order, the Navy's interpretation was "contrary to the statute's structure and there was no evidence that Congress intended to change the meaning of the statute with its one-word substitution in Section 6388(b)[.]"  EAJA Mot. 15 (citing *Prochazka II*, 104 Fed. Cl. at 791–93).  Moreover, the Navy's interpretation of Section 6388(b) was inconsistent with the legislative history, because there is no evidence that Congress intended to change "the relevant appointment for purposes of computing the years of service creditable toward retirement."  EAJA Mot. 15 (citing *Prochazka II*, 104 Fed. Cl. at 794 (analyzing the legislative history of 10 U.S.C. § 6388(b), as amended in 1968)).

The context of this case also needs to be kept in mind, since, for the past decade, the Navy engaged in a variety of dilatory tactics that delayed resolution of Captain Prochazka's claims, notably declining "to actually address his questions regarding [the Navy's] interpretation of the statute in question[.]"  EAJA Mot. 14; *see also* Pl. Reply 7 ("[T]he Government never bothered to address [Plaintiff's] questions regarding [the Navy's] interpretation of . . . Section 6388(b).").  The Navy also did not provide Captain Prochazka with information regarding how his mandatory retirement date was determined, nor did it allow Plaintiff to comment on the May 2004 NPC Advisory Opinion, in direct contravention of Navy regulations.  EAJA Mot. 14–15.  The Navy's statutory interpretation also was not substantiated by any longstanding interpretation of Section 6388(b), as amended in 1968.  EAJA Mot. 15–16.  Instead, the Navy's interpretation was supported only by an internal memorandum issued by the Acting Navy JAG in 1972 (that contained no statutory analysis), and a 1975 memorandum from the Acting Navy JAG that simply adopted the reasoning of the 1972 memorandum.  EAJA Mot. 15–16.

Moreover, the 2001 OJAG Advisory Opinion is "the *only* internal Navy document in the Administrative Record in which the author discusses the fact that the word 'originally' was replaced by 'initially' in the 1968 Act," and that Opinion entirely contradicted the Navy's

statutory interpretation and was not disclosed to Plaintiff until 2010. EAJA Mot. 16 (quoting *Prochazka II*, 104 Fed. Cl. at 796 (emphasis in original)); *see also id.* ("An officer's first appointment in a staff corps is an original appointment; thus, substituting 'initially' for 'originally' would not alter the meaning of the statute [*i.e.*, 10 U.S.C. § 6388(b), as amended in 1968]." (quoting 2001 OJAG Op. at 7 n.23)); Pl. Reply 2 ("[T]he Navy concealed its own statutory interpretation for more than 8 years . . . basing its defense . . . on a statutory interpretation argument contradicted by its own statutory interpretation from 2001."). Had the Navy followed the 2001 OJAG Opinion—"its own internal advice"—Captain Prochazka would have avoided more than a decade of litigation. EAJA Mot. 16.

The Government's "most egregious conduct," however, occurred after the court's December 10, 2009 Memorandum Opinion And Order remanding the case to the BCNR for further proceedings. EAJA Mot. 16. At that point, the Navy "managed to issue two contradictory advisory opinions," *i.e.*, a March 29, 2010 NPC Advisory Opinion and a March 26, 2010 OJAG Advisory Opinion, both concluding that Captain Prochazka should be denied relief. EAJA Mot. 16–17. But, the NPC Advisory Opinion merely reiterated the Navy's flawed statutory interpretation, supported by nothing more than a cursory analysis of the "plain meaning" of "initially." EAJA Mot. 17. In contrast, the 2001 OJAG Advisory Opinion concurred with Captain Prochazka's view that "substituting 'initially' for 'originally' effected no substantive change in the statute," but also concluded, without any "credible support," that Captain Prochazka was appointed as a lieutenant and therefore was not in a qualifying grade for purposes of the Section 6338(b). EAJA Mot. 17–18 & n.5; *see also* Pl. Reply 8 (construing the erroneous conclusion in the 2001 OJAG Opinion that Plaintiff was appointed as a lieutenant as being belied by "a simple review of [Plaintiff's] military records"). The inconsistency between the NPC and OJAG Advisory Opinions was so stark that the OJAG adopted, without performing any additional analysis, the NPC's statutory interpretation in a supplemental advisory opinion to "harmonize" the Navy's contradictory positions. EAJA Mot. 18. Based on this record, the court should reject the Government's flawed contention—that its position in this case was substantially justified. Pl. Reply 5 (citing *Metro. Van & Storage, Inc. v. United States*, 101 Fed. Cl. 173, 187 (2011) (holding that substantial justification requires the Government to be "*clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts" (internal citation omitted))).

In addition, the Government's position was not *ipso facto* substantially justified simply because this case may have involved an issue of first impression. Pl. Reply 6 (citing *Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed. Cir. 1984) ("[T]he novelty of the [G]overnment's position cannot compensate for the paucity of support in favor of that position."), *superseded on other grounds by statute as recognized in Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995)). "Unlike most cases of first impression, presenting novel legal claims . . . , this was not a particularly difficult statutory interpretation issue." Pl. Reply 6. The structure, plain meaning, and legislative history of 10 U.S.C. § 6338 all undermined the Government's statutory interpretation, and thus, "this was not a close call." Pl. Reply 7; *see also id.* (explaining that Plaintiff's lawsuit "should not have been a case at all, had the Navy ever bothered to examine [Plaintiff's] statutory interpretation argument at some point prior to [the court's] decision more than 10 years after [Plaintiff] filed his initial claim").

Plaintiff also discounts the Government's assertion that "it is of some support for [the Government's] position that the BCNR twice ruled against [Plaintiff]." Pl. Reply 10 (citing Gov't Resp. 10). As the court determined in the December 10, 2009 Memorandum Opinion And Order, the BCNR's May 11, 2004 decision violated 10 U.S.C. § 1556, since the BCNR did not allow Plaintiff to comment on the NPC advisory opinion. Pl. Reply 3, 10. The second BCNR decision, issued on March 16, 2011, also "failed to rationally harmonize two contradictory opinions from NPC and OJAG" (Pl. Reply 10), and was determined by the court to be arbitrary and capricious. Pl. Reply 3; *see also id.* 10 (construing the BCNR's decision as merely "rubber-stamping" the Navy's statutory interpretation argument). Further, "the BCNR never acknowledged that the Navy's [statutory interpretation of Section 6388(b), as amended in 1968] was contrary to the law prior to DOPMA." Pl. Reply 10.

In addition, although *Russo* involved a "Naval Officer with similar circumstances" to Captain Prochazka, *Russo* "never addressed [Plaintiff's] statutory argument, . . . it is unclear whether that argument was ever presented to the court in the first place," and the District Court concluded that the controversy was non-justiciable. Pl. Reply 11 (citing Order, *Russo v. Winter*, No. 06-cv-1256 (S.D. Cal. June 30, 2006), ECF No. 12); *see also id.* (explaining that the District Court never engaged in the statutory analysis that was determinative in this case, because the court "simply assumed the Navy's interpretation of relevant statutes was correct").

Finally, the procedural history of this case does not demonstrate that the Government's position was substantially justified. Pl. Reply 11. Instead, procedural issues such as the court's remand to the BCNR, additional briefing to respond to *amicus curiae* National Veterans Legal Service Program, and "the possibility of a class action" required additional time. Pl. Reply 11–12. Therefore, "the lengthy procedural history and multiple rounds of briefing do not, in any way," justify the Government's position. Pl. Reply 14; *see also id.* ("The only real complexity was in reviewing the lengthy record to determine whether the Navy *had ever really offered any interpretation of the key statutory amendment* that was at the heart of [Plaintiff's] claim." (emphasis added)).

### 3.    The Court's Resolution.

The United States Supreme Court has defined "substantially justified" to mean "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). In determining substantial justification, the court must "look at the entirety of the [G]overnment's conduct and make a judgment call whether the [G]overnment's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991). "To be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness[.]" *Pierce*, 487 U.S. at 566. "Congress did not, however, want the substantially justified standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]" *Scarborough*, 541 U.S. at 415 (citation and internal quotations omitted).

The Government "has the burden to show that its position was substantially justified." *Miles Constr., LLC v. United States*, 113 Fed. Cl. 174, 177 (2013); *see also White v. Nicholson*,

412 F.3d 1314, 1315 (Fed. Cir. 2005) ("The EAJA requires the Government to show that its position during the course of proceedings was substantially justified."). To satisfy this burden, the Government must justify its position throughout the litigation, as well as its prelitigation conduct. *See Jean*, 496 U.S. at 159 (explaining that the Government's "position . . . encompass[es] both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions"); *see also Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) (explaining that the "'position' of the [G]overnment includes actions taken at the agency level as well as arguments made during litigation").

The court is mindful that Congress did not enact the EAJA to function as a mandatory fee shifting device in litigation. *See KMS Fusion, Inc.*, 39 Fed. Cl. at 598. The novelty or difficulty of the legal issues presented also is relevant in determining whether the Government's position was substantially justified. *See Norris*, 695 F.3d at 1265 (explaining that assessing the "justification of the [G]overnment's position [requires the court to] . . . consider the clarity of the governing law, that is, whether 'judicial decisions on the issue left the status of the law unsettled,' and whether the legal issue was novel or difficult" (quoting *Nalle v. C.I.R.*, 55 F.3d 189, 192 (5th Cir. 1995))). It is equally clear that the EAJA imposes on the court the "responsibility to examine thoroughly the entire history of the dispute, not just the litigation phase." *KMS Fusion, Inc.*, 39 Fed. Cl. at 597; *see also* 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States" as "the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based"). In addition, although the EAJA requires a holistic interpretation of the Government's conduct, so that the reasonableness of the Government's position is "determined by the totality of circumstances," *Essex Electronic Engineers, Inc. v. United States*, 757 F.2d 247, 253 (Fed. Cir. 1985), "the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified," *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (internal citations and quotations omitted).

The United States Court of Appeals for the Federal Circuit has held that:

> [S]ubstantial justification requires that the Government show that it was *clearly reasonable* in asserting its position, including its position at the agency level, in view of the law and the facts. The Government must show that it has not persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.

*Gavette*, 808 F.2d at 1467 (emphasis added) (internal citations and quotations omitted).

The Navy's prelitigation conduct in this case evidences a pattern of dilatory tactics and unreasonable behavior. For example, the Administrative Record contains no evidence that, after Captain Prochazka petitioned the NPC to recalculate his assigned retirement date on June 6, 2001, the Navy ever responded to his inquiry. Even after the NPC forwarded Captain Prochazka's unanswered petition to OJAG for an opinion, he was not even provided with a copy of the OJAG opinion. Around July 2002, Captain Prochazka received a "response" to his unanswered June 6, 2001 petition that consisted largely of an admission that records pertaining to Captain Prochazka's petition were somehow lost. This conduct was exacerbated by the

Navy's failure to allow Captain Prochazka to comment on the May 2004 NPC Advisory Opinion in contravention of 10 U.S.C. § 1556, despite Captain Prochazka's explicit written request to do so.  These errors and delays engendered more errors and delays.

After the court issued its December 10, 2009 Memorandum Opinion And Order, the NPC and OJAG issued contradictory advisory opinions on March 29 and March 26, 2010, respectively, requiring the BCNR to request a "supplemental" OJAG Advisory Opinion to address how the two opinions could be "harmonized."  This "harmonization" took the form of the OJAG summarily adopting, without performing any additional analysis, the incongruous March 29, 2010 NPC Advisory Opinion.  During this process, the Navy also revealed for the first time, despite repeated prior requests by Captain Prochazka, that the 2001 OJAG Opinion explicitly adopted Captain Prochazka's statutory interpretation argument and contravened the Navy's statutory argument.  Eight years passed before the Navy finally disclosed this Opinion.

Subsequently, the Government adopted the Navy's view that substituting "initially" for "originally"—two words that are undeniably synonyms—heralded a substantive change, without any indication from Congress, in 10 U.S.C. § 6388(b).  This decision now adversely affects an entire class of Navy officers, like Captain Prochazka, who began their career in the JAGC or JAGC Student Program.  The Government's position also departed from the settled pre-1968 understanding that a staff corps officer's "total commissioned service" was calculated from their first commission in the Regular Navy, with a permanent commission; time spent as a Reserve officer or a line officer was not counted.  *See To the Secretary of the Navy*, 37 Comp. Gen. at 748 (explaining that "years of commissioned service beginning on June 30 of the year in which the officer was *originally commissioned in a staff corps of the Regular Navy, with a permanent commission*, [are to be counted] for the purpose of determining a staff corps officer's eligibility for . . . separation from the active list").  In sum, the Government's argument not only was unfounded in law, but facially implausible.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

The combination of the Government's erroneous statutory interpretation, neglect in disclosing the *highly relevant* 2001 OJAG Opinion, unlawful failure to allow Plaintiff to comment on the NPC Advisory Opinion, and unwillingness to address Plaintiff's statutory interpretation argument at the agency level, was simply not justifiable "to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565; *cf. Kelly v. Nicholson*, 463 F.3d 1349, 1355 (Fed. Cir. 2006) (concluding that when the Government ignored relevant evidence presented by the plaintiff at the agency level, the Government's position was not substantially justified because "a failure to consider evidence of record cannot be substantially justified").  Indeed, the process outlined above is the paradigm example of an agency continuing to press "a tenuous factual or legal position."  *See Gavette*, 808 F.2d at 1467 (holding that, to demonstrate substantial justification, the "Government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation'" (internal citation omitted)).  It is true that the Government "can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation."  *Patrick*, 668 F.3d at 1330.  But, where the Government

"interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification." *Id.* at 1330–31; *see also Marcus v. Shalala*, 17 F.3d 1033, 1038 (7th Cir. 1994) (upholding the District Court's decision that the Government's position was not substantially justified, because the Government's interpretation was "manifestly contrary to the [controlling] statute" (citations and internal quotation marks omitted)); *Or. Natural Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992) (holding that the Government's position was not substantially justified where it contravened the "clear" language and legislative history of the statute).

Although the statutory issue presented in this case was one of first impression, "a relative dearth of precedent does not in itself substantially justify governmental action." *Infiniti Info. Solutions, LLC v. United States*, 94 Fed. Cl. 740, 749 (2010); *see also Gutierrez v. Barnhart,* 274 F.3d 1255, 1261 (9th Cir. 2001) ("[T]here is no *per se* rule that EAJA fees cannot be awarded where the [G]overnment's litigation position contains an issue of first impression."). And, while the Government posits that its position was supported by "decades" of practice by the Navy and BCNR, the continual reassertion of an erroneous legal position, even if supported by administrative decisions, does not render the Navy's position substantially justified.[7] *Infiniti Info. Solutions, LLC*, 94 Fed. Cl. at 749 ("Moreover, even if prior administrative decisions had supported the government's position, that position would not necessarily be reasonable."); *see also Metro. Van. & Storage, Inc.*, 101 Fed. Cl. at 189 ("[E]ven if prior GAO decisions had found in favor of the government's position, that position would not automatically or necessarily have been substantially justified."); *Geo–Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 77–78 (2007) (holding that the Government's position was not substantially justified even though it was supported by a multitude of GAO decisions, because those GAO decisions were contrary to explicit regulations). To be sure, the 1972 and 1975 Acting Navy JAG Memoranda provide some support for the Government's position, but the Navy never issued formal regulations endorsing the views articulated therein, neither Memorandum actually addressed the substitution of the word "initially" for "originally," and the only internal Navy document in the Administrative Record that discussed this precise issue explained that "substituting 'initially' for 'originally' [did] not alter the meaning of [10 U.S.C. § 6388(b), as amended in 1968.]" *Prochazka II*, 104 Fed. Cl. at 796–97 (quoting 2001 OJAG Op. at 7 n. 23).

---

[7] Assuming, *arguendo*, that the United States District Court for the Southern District of California's decision in *Russo* supports the Government's position, "[o]bviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Pierce*, 487 U.S. at 569. Further, any support that *Russo* provides is based on the District Court's assumption, unaccompanied by substantive analysis, that the Navy adopted a "uniform and consistent interpretation of the regulations at issue [that] is not plainly erroneous[.]" Order, *Russo*, No. 06-cv-1256 (S.D. Cal. June 30, 2006), at 7, ECF No. 12.

For these reasons, the court has determined that the Government has not shown that it was "*clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts."[8] *Gavette*, 808 F.2d at 1467 (emphasis in original).

### D.   Whether The Court's Award Should Include Work Performed On Determining The Viability Of A "Class Action."

#### 1.   The Government's Argument.

The Government challenges only one category of fees claimed, *i.e.*, the time and expenses claimed related to the court's inquiry about whether this case should be categorized as a class action. Gov't Resp. 11. The amount of legal fees in that category is $6,043.78. Gov't Resp. 11. The United States Court of Federal Claims has discretion to reduce a fee award sought under the EAJA, where an amount claimed could be considered "recovery out of proportion to [a party's] actual success." Gov't Resp. 11 (quoting *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 484 (2005) (quoting *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 83 (2002))). Specifically, the court may reduce an award to reflect the prevailing party's lack of success on a particular issue raised. Gov't Resp. 11 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) ("The [trial] court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.")).

Several of the billing records submitted indicate that, at the court's request, Plaintiff's counsel spent time "addressing the issue of converting this case to a class action," but concluded that was not a viable option. Gov't Resp. 12. Because Plaintiff did not succeed on this issue, Plaintiff's counsel should not be compensated for this work. Gov't Resp. 11–12 (citing Supplemental Brief, *Prochazka v. United States*, No. 06-cv-827, Dkt. No. 63, at 46 ([T]his case is not appropriate for certification as a class action.")). The Government asserts that the court should exclude all entries associated with certifying this case as a class action since Plaintiff's billing records are recorded in "block billing" entries. Gov't Resp. 14 (citing *Cobell v. Norton*, 407 F. Supp. 2d 140, 160 (D.D.C. 2005) (observing that courts "confronted with petitions [for attorney fees] containing block time entries . . . . have simply voided 'the entire time entries billed as block time'" (quoting *Reyes v. Nations Title Agency of Ill., Inc.*, No. 00-7763, 2001 WL 687451, at *1 (N. D. Ill. June 19, 2001)))). Since the burden of proof lies with the plaintiff, and "block-billing frustrates the [c]ourt's inquiry," all such entries should be denied. Gov't Resp. 14.

#### 2.   Plaintiff's Response.

Plaintiff responds that the Government's assertions are belied by relevant decisional authority holding that "when a plaintiff achieves excellent results, regardless of the number of arguments or claims upon which it prevails, it is entitled to a full fee award under [the] EAJA."

---

[8] The court also is deeply troubled by the fact that, for other Officers like Captain Prochazka whose claims accrued in 2002, the Government's dilatory tactics at the Navy-level likely have caused the statute of limitations to run and therefore precluded those Officers from filing suit to vindicate their rights.

Pl. Reply. 15 (citing *Metro. Van. & Storage, Inc.*, 101 Fed. Cl. at 196 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation[.]" (quoting *Hensley*, 461 U.S. at 435–37))).

Although Plaintiff ultimately determined this case was not appropriate for class action treatment, "some of the details of that work helped bolster other arguments, including [Plaintiff's] detailed analysis of the methods for assigning a service date under SECNAVINST 1821.1."  Pl. Reply 18 (quoting *Hensley*, 461 U.S. at 448 (Brennan, J., concurring in part, dissenting in part) (explaining that "even where two claims [asserted in the same lawsuit] apparently share no 'common core of facts' or related legal concepts, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined" (internal citations omitted))).  Moreover, the work Plaintiff performed in this case could favorably impact a potential class action of similarly situated plaintiffs in the future. Pl. Reply 18 (noting that "any ruling in [Plaintiff's] favor could clearly impact others similarly situated").

The court specifically requested that the parties analyze the appropriateness of this case for treatment as a class action; Plaintiff's "counsel duly complied with the [c]ourt's request and provided an analysis as to whether class action treatment was warranted for this matter."  Pl. Reply 19.  Although the Government argues that it should not bear the costs of Plaintiff's work on the class action issue, it is similarly unfair to shoulder Plaintiff with that burden.  Pl. Reply 19.  Finally, Plaintiff argues that, should the court determine that fees associated with work on the class action issue are not recoverable, the court should not strike the block-billed entries associated with that issue, but "apportion[] an appropriate recovery based on a reasonable assessment of the amount of time in the block-billed time entries attributable to work that did not involve any class action issues."  Pl. Reply 19 n.7 (citing *Info. Sciences Corp. v. United States*, 88 Fed. Cl. 626, 634–35 (reducing the amount of recoverable attorney fees based on a "fair approximation of the work performed on reimbursable claims")).

### 3.  The Court's Resolution.

In *Hensley*, the United States Supreme Court held that:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . . *The result is what matters*.

*Hensley*, 461 U.S. at 435 (emphasis added).

Although *Hensley* involved the fee-shifting provision under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), the United States Court of Appeals for the Federal Circuit has held that the *Hensley* standard is to be used in determining the amount of fees awarded under the EAJA.  *See Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007)

("[W]e see no reason why the . . . principles [announced in *Hensley*] should not be equally applicable to the parallel fee-shifting provision of the Equal Access to Justice Act.").

Where a plaintiff achieves only "partial or limited success," however, instead of "excellent results," a fully compensatory award of fees may be excessive. *Hensley*, 461 U.S. at 435–36; *see also id.* at 440 ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."). The United States Court of Federal Claims has "concluded that a plaintiff experiences 'partial or limited success' typically where the plaintiff fails on the majority of its claims or recovers significantly less damages than the amount it originally sought." *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 57 (2010) (citing, *e.g.*, *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 703–04 (2010) (reducing plaintiff's attorney fees because plaintiff only prevailed on three of seven total claims); *CEMS, Inc.*, 65 Fed. at 483–84 (same, re: where plaintiff "prevailed on only 9 of the 30 claims and individual bid items actually litigated, and received only somewhat less than 24 percent of the damages sought")).

In striking the appropriate balance to determine whether to adjust a fee award for claims that "involve a common core of facts or [that are] based on related legal theories," the United States Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 435–36. Thus, in a lawsuit consisting of related claims, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [trial court] did not adopt each contention raised." *Id.* at 440; *see also Metro. Van & Storage, Inc.*, 101 Fed. Cl. at 196 (explaining that "*Hensley* requires only that the plaintiff achieve 'substantial relief,' not that there be an identity between the relief sought and the relief granted"); *United Partition Sys., Inc.*, 95 Fed. Cl. at 57 (holding that the plaintiff achieved "substantial success" where it prevailed at each critical procedural stage of litigation, won on the merits, and recovered approximately 81% of the damages it sought). There is no "precise rule or formula" for determining the degree of success a party achieved, and a "plaintiff can obtain 'excellent results' even if it lost on some claims." *United Partition Sys., Inc.*, 95 Fed. Cl. at 57 (quoting *Hensley*, 461 U.S. at 435). Trial courts are vested with broad discretion to determine appropriate and reasonable attorney fees. *See Metro. Van & Storage, Inc.*, 101 Fed. Cl. at 185 (explaining that the court "has considerable discretion to determine what level of attorneys' fees are reasonable and the amount of hours that should be compensated"); *see also Hubbard*, 480 F.3d at 1334–35 (same).

In the court's view, Plaintiff's counsel achieved "excellent results" and is entitled to a full award of attorney fees. This is not a case in which Plaintiff obtained partial or limited success by achieving "significantly less damages than the amount it originally sought." *United Partition Sys., Inc.*, 95 Fed. Cl. at 57. In fact, Plaintiff's counsel obtained complete relief for his client, since the court granted Plaintiff's Motion For Judgment On The Administrative Record, awarded Plaintiff back pay, enhanced retirement pay, and ordered a correction of Plaintiff's military records. To paraphrase the Court in *Hensley*, Plaintiff's counsel obtained "the result that mattered." *See Hensley*, 461 U.S. at 435 ("The result is what matters."). That Plaintiff did not "technically" prevail on the issue of converting this case into a class action does not detract from the "degree of success obtained," which the United States Supreme Court has described as "the most critical factor." *Id.* at 436; *see also United Partition Sys, Inc.*, 95 Fed. Cl. at 57 ("A

plaintiff can obtain 'excellent results' even if it lost on some claims" (quoting *Hensley*, 461 U.S. at 435)).   Further, Plaintiff's counsel addressed the question of certifying this case as a class action after a specific request by the court.  *See* Order, *Prochazka v. United States*, No. 06-827 (Fed. Cl. Mar. 25, 2008), ECF No. 43 (explaining the court's concern that "this case should more properly be certified as a class action").

For these reasons, Plaintiff's counsel is entitled to a full fee award in an amount as described below.

### E.   Plaintiff's Total Award of Fees, Expenses And Costs Under The Equal Access To Justice Act.

#### 1.   Attorney Fees.

Plaintiff has provided an itemized statement demonstrating that a total of 625.20 hours were spent litigating the merits phase of this litigation, and preparing the July 19, 2013 Motion For Attorney Fees And Related Expenses/Costs  and  January 22, 2014 Reply.  *See*  Pl. Reply Ex. A.   The United States Court of Appeals for the Federal Circuit has held that "attorney fees incurred in the preparation of an application for fees are compens[a]ble under the EAJA." *Schuenemeyer v. United States,* 776 F.2d 329, 333 (Fed. Cir. 1985).   The court finds that all "entries in question provide sufficient detail to inform the court as to the content of the work done during the hours claimed," *Miles Construction,* LLC, 113 Fed. Cl. at 180, and the 625.20 hours claimed is reasonable given the length and complexity of this case.   Thus, all hours listed in the updated itemized description are included in the fees calculation.

#### 2.   Cost Of Living Adjustment.

The EAJA provides that:

[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).

As a matter of law, the United States Court of Federal Claims has discretion in determining whether or not to apply a cost of living adjustment.  *See Oliveira v. United States,* 827 F.2d 735, 742 (Fed. Cir. 1987) (holding that the United States Court of Federal Claims did not abuse its discretion in denying a cost of living adjustment).   To prevail on the cost of living adjustment, a plaintiff must "allege[] that the cost of living has increased" from the effective date of the statutory cap on fees to the date legal services were rendered, as measured by the CPI.  *See Cal. Marine Cleaning, Inc. v. United* States, 43 Fed. Cl. 724, 733 (1999).   And, the United States Court of Federal Claims "ordinarily grants a cost of living adjustment in an EAJA action when the Department of Labor's Consumer Price Index . . . indicates that such an adjustment is warranted." *Miles Constr., LLC,* 113 Fed. Cl. at 181 (citing *Dalles Irrigation Dist.*, 91 Fed. Cl.

at 705 (explaining that a cost of living adjustment "should be freely granted" absent unusual circumstances)).

In this case, Plaintiff adequately alleges that the cost of living increased and has provided an itemized spreadsheet applying an accepted methodology that compares the March 1996 CPI to the CPI for each month during which Plaintiff's counsel billed hours, to calculate the cost of living adjustment.  Pl. Reply Ex. A; *see also Carmichael v. United States*, 70 Fed. Cl. 81, 86 (2006) (applying the cost of living adjustment "by comparing the March 1996 CPI to the CPI for each month an attorney billed hours"); *Gonzalez v. United States*, 44 Fed. Cl. 764, 771 (1999) (same).  In this case, the Government does not dispute that a cost of living adjustment is warranted, nor contests Plaintiff's method for calculating the adjustment.  Gov't Resp. at 14 (explaining that, should the court award Plaintiff attorney fees, the Government "sees no other reasons to reduce a fee award from the amount [Plaintiff has] requested").  Therefore, the court finds it appropriate to apply a cost of living adjustment and, since the Government does not contest Plaintiff's methodology, the court accepts Plaintiff's calculations as set forth in Pl. Reply Ex. A.  *See Dalles Irrigation Dist.*, 91 Fed. Cl. at 705 (holding, where the Government does not object to a plaintiff's method for calculating a cost of living adjustment, that the court may adopt the plaintiff's reasonable methodology).

For these reasons, the court has determined that Plaintiff is entitled to $110,561.56 in attorney fees, reflecting compensation for the 625.20 attorney hours billed, adjusted for a cost of living increase.  Pl. Reply Ex. A.

### 3.    Expenses And Costs.

Captain Prochazka seeks reimbursement of $2,713.37, including: (1) $763.37 in costs and expenses incurred during the period he proceeded *pro se*; and (2) $1,950.00 in costs and expenses that Plaintiff's counsel and the law firm of LeClair Ryan, P.C. incurred from January 23, 2009 to January 9, 2013.  *See* EAJA Decl. Ex. B (detailing Captain Prochazka's costs and expenses); Ex. D (same, re: expenses and costs for LeClair Ryan, P.C.).  Since the Government does not object to these reasonable expenses and costs, they are included in Plaintiff's total fees and costs award.

## IV.    CONCLUSION.

For these reasons, Plaintiff's July 19, 2013 Motion For Attorney Fees and Related Expenses/Costs and January 22, 2014 Supplemental Motion For Attorney Fees are granted. Plaintiff is awarded $110,561.56 in attorney fees and $2,713.37 in related expenses and costs.

Accordingly, the Clerk of Court will enter judgment for Plaintiff in the total amount of $113,274.93, representing the total fees and expenses allowable under the Equal Access to Justice Act.

**IT IS SO ORDERED.**

 s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**